**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RB DISTRIBUTION, INC. and DORMAN PRODUCTS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| FEDERAL-MOGUL MOTORPARTS LLC, ADVANCED SUSPENSION TECHNOLOGY LLC f/k/a DRIV AUTOMOTIVE INC., and DFMMP LLC f/k/a DRIV INCORPORATED, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT AND INJUNCTIVE RELIEF**

Plaintiffs, RB Distribution, Inc. ("RB") and Dorman Products, Inc. ("Dorman Products") (RB and Dorman Products are referred to collectively as, "Dorman" or "Plaintiffs"), for their complaint against Defendants, Federal-Mogul Motorparts LLC ("Federal-Mogul"), Advanced Suspension Technology LLC f/k/a DRiV Automotive Inc., and DFMMP LLC f/k/a DRiV Incorporated, (collectively, "Defendants"), allege as follows:

**THE PARTIES**

1.    RB is a wholly owned subsidiary of Dorman Products and is a company organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 3400 East Walnut St., Colmar, Pennsylvania 18915.

2.    Dorman Products is a company organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 3400 East Walnut St., Colmar, Pennsylvania 18915.

3.    On information and belief, Advanced Suspension Technology LLC, formerly DRiV Automotive Inc., is a company organized and existing under the laws of Delaware, with a

principal place of business at 15701 Technology Drive, Northville, MI 48168. On information and belief, Advanced Suspension Technology LLC directly and/or indirectly makes, uses, sells, offers to sell, and/or imports into the United States engine oil filter housings, including the accused products in this lawsuit.

4.     On information and belief, DFMMP LLC, formerly DRiV Incorporated, is a company organized and existing under the laws of Delaware, with a principal place of business at 15701 Technology Drive, Northville, MI 48168. On information and belief, DFMMP LLC directly and/or indirectly makes, uses, sells, offers to sell, and/or imports into the United States engine oil filter housings, including the accused products in this lawsuit.

5.     On information and belief, Federal-Mogul Motorparts LLC is a company organized and existing under the laws of Delaware, with a regular place of business at 7450 McCormick Blvd., Skokie, IL 60076. On information and belief, Federal-Mogul Motorparts LLC does business as DRiV. Federal-Mogul Motorparts LLC is the record owner of FEL-PRO trademarks that Defendants use in connection with promotion, sales, and distribution of the accused products in this lawsuit. On information and belief, Federal-Mogul Motorparts LLC directly and/or indirectly makes, uses, sells, offers to sell, and/or imports into the United States engine oil filter housings, including the accused products in this lawsuit.

6.     Defendants have variously referred to themselves under the common names/brands "DRiV" and "Fel-Pro," without distinguishing between Defendants' individual corporate entities. On information and belief, Defendants are commonly owned by Tenneco Inc. and have shared common facilities, websites, marketing materials, and legal counsel, including with regard to Defendants' making, using, selling, offering to sell, and/or importing into the United States the accused products in this lawsuit.

2

**JURISDICTION AND VENUE**

7.  This is a civil action for patent infringement of U.S. Patent Nos. 11,635,005 (the "'005 Patent"), 11,639,674 (the "'674 Patent"), 11,639,675 (the "'675 Patent"), and 12,234,755 (the "'755 Patent") (collectively, the "Asserted Patents") in violation of the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, arising from Defendants' unauthorized direct and/or indirect manufacture, use, offers to sell, sales, and/or importation into the United States of certain oil filter housings (the "Infringing Products").

8.  This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. § 1338(a).

9.  This Court has general personal jurisdiction over each Defendant because each Defendant is organized and exists under the laws of the State of Delaware. It is also fair and reasonable for this Court to exercise specific personal jurisdiction over each Defendant because, on information and belief, Defendants are purposefully and intentionally availing themselves of the privileges of doing business here for the purpose of committing acts of patent infringement that give rise to this lawsuit and that harm Dorman in this District.

10.  Venue is proper in this District pursuant to at least 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(b). Each Defendant resides in Delaware because it is organized under Delaware law.

**INTRODUCTION**

11.  Dorman is a leading supplier of replacement and upgrade parts in the motor vehicle aftermarket industry, serving passenger cars, light-, medium-, and heavy-duty trucks, as well as specialty vehicles, including utility terrain vehicles and all-terrain vehicles. Dorman Products is

3

the public- and consumer-facing brand of its wholly owned subsidiary RB, which owns by assignment each of the patents asserted in this action to Dorman Products' exclusive benefit.

12.     Dorman is headquartered in Colmar, Pennsylvania. Dorman has more than 30 facilities and 3,500 employees worldwide.

13.     Dorman develops, manufactures, and sells a variety of automotive parts. Dorman offers more than 100,000 distinct products.

14.     One such product is Dorman's cast aluminum engine oil filter housing ("OFH") identified by Dorman's SKUs 926-959 (with additional components) and 926-876 (without additional components, now discontinued) that Dorman sells to replace an original equipment manufacturer ("OEM") plastic OFH of several motor vehicles.

15.     Reproduced below is a screenshot of Dorman's web page (URL https://www.dormanproducts.com/p-139011-926-959.aspx?origin=keyword) advertising its SKU 926-959, captured August 10, 2026:

4



**Illustration 1:** Screen Shot of Dorman Web Page for Product SKU 926-959

16. A close-up image of Dorman's 926-959 OFH depicted in Illustration 1 is reproduced below:



**Illustration 2:** Close-Up Image of Dorman's Product SKU 926-959

5

17.     Dorman invested substantial time, skill, and resources over many years to create and maintain a reputation for high quality products, including its 926-959 OFH. Dorman's 926-959 OFH has been a substantial commercial success. To protect these investments and the invaluable goodwill built up through its years of effort in the marketplace, Dorman pursued and has acquired numerous intellectual property rights, including the patents asserted in this action.

18.     At least one claim from each of the patents Dorman asserts in this action reads upon Dorman's 926-959 OFH (the "Patented Product(s)").

## THE ASSERTED PATENTS

19.     This lawsuit is premised on Dorman's assertion of its U.S. Patent Nos. 11,635,005 ("'005 Patent"); 11,639,674 ("'674 Patent"); 11,639,675 ("'675 Patent"); and 12,234,755 ("'755 Patent") (collectively, the "Asserted Patents").

20.     The '005 Patent, entitled "Oil Filter Assembly," was filed August 19, 2021, claiming priority to provisional application 63/068,759 filed August 21, 2020.

21.     The United States Patent and Trademark Office ("USPTO") duly and legally issued the '005 Patent to RB on April 25, 2023. A Certificate of Correction was issued June 27, 2023. On July 28, 2023, a non-party to this action, Skyward Automotive Products, LLC ("SKP"), filed a request for *ex parte* re-examination of the '005 Patent with the USPTO. The USPTO instituted the requested re-examination and issued a Reexamination Certificate with all claims unchanged and confirmed as patentable. On October 17, 2025, SKP requested a second *ex parte* re-examination of the '005 Patent. At present, the second re-examination has been allowed but not yet taken up for consideration by the USPTO. A true and correct certified copy of the '005 Patent is attached hereto as Exhibit 1. The '005 Patent is presumed valid and enforceable and is currently in full force and effect.

22.     RB is the owner and assignee of all rights, title, and interest in and to the '005 Patent, and Plaintiffs collectively enjoy the full and exclusive right to bring this action to enforce the '005 Patent against infringers, and the right to recover damages for all relevant time periods, including for past infringement.

23.     The '674 Patent, entitled "Oil Filter Assembly," was filed November 17, 2021, as a continuation of the application that matured into the '005 Patent, and, thus, the '674 Patent and the '005 Patent share a common specification and drawings.

24.     The USPTO duly and legally issued the '674 Patent to RB on May 2, 2023. A Certificate of Correction was issued June 27, 2023. On July 28, 2023, a non-party to this action, SKP, filed a request for *ex parte* re-examination of the '674 Patent with the USPTO. The USPTO instituted the requested re-examination and issued a Reexamination Certificate amending one claim and affirming the patentability of all claims. On October 17, 2025, SKP requested a second *ex parte* re-examination of the '674 Patent. At present, the second re-examination has been allowed but not yet taken up for consideration by the USPTO. A true and correct certified copy of the '674 Patent is attached hereto as Exhibit 2. The '674 Patent is presumed valid and enforceable and is currently in full force and effect.

25.     RB is the owner and assignee of all rights, title, and interest in and to the '674 Patent, and Plaintiffs collectively enjoy the full and exclusive right to bring this action to enforce the '674 Patent against infringers, and the right to recover damages for all relevant time periods, including for past infringement.

26.     The '675 Patent, entitled "Oil Filter Assembly," was filed November 11, 2022, as a continuation of the application that matured into the '674 Patent, and, thus, the '675 Patent and the '674 Patent share a common specification and drawings.

27.    The USPTO duly and legally issued the '675 Patent to RB on May 2, 2023. A Certificate of Correction was issued June 27, 2023. On July 28, 2023, a non-party to this action, SKP, filed a request for *ex parte* re-examination of the '675 Patent with the USPTO. The USPTO instituted the requested re-examination and issued a Reexamination Certificate amending one independent claim and one dependent claim and affirming the patentability of all claims. On October 17, 2025, SKP requested a second *ex parte* re-examination of the '675 Patent. At present, the second re-examination has been allowed but not yet taken up for consideration by the USPTO. A true and correct certified copy of the '675 Patent is attached hereto as Exhibit 3. The '675 Patent is presumed valid and enforceable and is currently in full force and effect.

28.    RB is the owner and assignee of all rights, title, and interest in and to the '675 Patent, and Plaintiffs collectively enjoy the full and exclusive right to bring this action to enforce the '675 Patent against infringers, and the right to recover damages for all relevant time periods, including for past infringement.

29.    The '755 Patent, entitled "Method and Process for Manufacturing a Unitary Oil Filter Adaptor," was filed March 31, 2023, as a continuation of the application that matured into the '675 Patent, and, thus, the '755 Patent and the '675 Patent share a common specification and drawings.

30.    The USPTO duly and legally issued the '755 Patent to RB on February 25, 2025. A Certificate of Correction was issued July 29, 2025. On October 17, 2025, SKP requested an *ex parte* re-examination of the '755 Patent. At present, the re-examination has been allowed but not yet taken up for consideration by the USPTO. A true and correct copy of the '755 Patent is attached hereto as Exhibit 4. The '755 Patent is presumed valid and enforceable and is currently in full force and effect.

31.     RB is the owner and assignee of all rights, title, and interest in and to the '755 Patent, and Plaintiffs collectively enjoy the full and exclusive right to bring this action to enforce the '755 Patent against infringers, and the right to recover damages for all relevant time periods, including for past infringement.

32.     Without limiting the disclosures therein, each of the Asserted Patents describes a cast metallic housing with oil flow paths through an elongated body that provides for connection to associated components (*e.g.*, oil filter, oil cooler, oil temperature sensor, oil pressure sensor). The Patented Product also provides for improved durability against burst pressure, heat, leaking, and age degradation.

33.     Figure 4 of each of the Asserted Patents is reproduced in Illustration 3 below.



**Illustration 3:** Figure 4 of the Asserted Patents

34.     Dorman virtually patent marks under 35 U.S.C. § 287(a) and began including the Asserted Patents on its marking page and marking the Patented Products shortly after the date each patent issued. Dorman's patent marking web page is located at the URL www.dormanproducts.com/patents. Consequently, Defendants have had constructive notice of each Asserted Patent from shortly after each patent issued.

35. Starting on July 12, 2021, and before the first Asserted Patent issued in April 2023, Dorman marked "patent pending" on the Patented Products. On February 24, 2022, patent publication US 2022/0056823 A1 published with substantially similar claims to those issued in the '005 Patent and was publicly available to Defendants. Defendants have had constructive notice of the '005 Patent since no later than February 24, 2022.

36. Because of correspondence from Dorman described further below, Defendants have had actual notice of the Asserted Patents since no later than March 18, 2026.

37. In view of the above, Defendants are, and have been, knowingly and willfully infringing the Asserted Patents.

38. Prosecution of the asserted patent family remains open and the USPTO is likely to issue additional patents related to the Asserted Patents.

## INFRINGING PRODUCTS

39. Without Dorman's authorization, each of the Defendants made, used, sold, offered to sell, and/or imported into the United States metallic OFH products that are covered by at least one claim of each Asserted Patent (hereafter, the "Infringing Products"). Defendants offer to sell the Infringing Products under at least the following product names: "Fel-Pro OFHA1001" and "Fel-Pro OFHA1001 Engine Oil Filter Housing;" the same and equivalent products infringe, whatever identifying information Defendants use. For example, one or more of the Defendants offers and sells Infringing Products on Amazon under the storefront "Fel-Pro" with at least the following Amazon Standard Identification Number ("ASIN"): B0H46Y6FT3.

40. An example of Defendants promoting their Infringing Products on Amazon and RockAuto.com are attached as Exhibits 5 and 6, and reproduced in Illustrations 4 and 5, below.



**Illustration 4:** Defendants' Amazon Listing for the Infringing Product



**Illustration 5:** Defendants' RockAuto.com Listing for the Infringing Product

41.     Defendants also promote the Infringing Products on their various websites, including, but not limited to, https://www.drivparts.com/part-

details.html?part_number=OFHA1001&brand_code=BCWV                    and

https://www.felpro.com/parts/leak-repair/oil-filter-housing-assemblies.html.

42.    Illustration 6, below, compares the Patented Product, Dorman's 926-959 OFH (on the left) with an exemplar Infringing Product purchased in the United States around June 22, 2026 (on the right) and demonstrates that the Infringing Product is a substantially identical replication of the Patented Product.



**Illustration 6:** Dorman's Patented Product (left), Defendants' Infringing Product (right)

43.    On information and belief, the high degree of similarity between the Infringing Products and Dorman's Patented Products evidences Defendants' intentional and knowing copying of Dorman's Patented Product and infringement of the Asserted Patents, all done to willfully exploit Dorman's investments, efforts, hard-earned reputation, and intellectual property rights. Defendants introduced the Infringing Products only after Dorman's Patented Product achieved commercial success.

44.    Shortly after becoming aware of Defendants' Infringing Products, Dorman wrote to Defendants on March 18, 2026, providing actual notice of Dorman's Asserted Patents.

45. On April 1, 2026, Defendants acknowledged receipt of, but did not otherwise substantively respond to, Dorman's March 18 letter.

46. Dorman wrote to Defendants a second time on April 22, 2026, and a third time on May 14, 2026, requesting confirmation that Defendants would respect the Asserted Patents. Defendants responded on June 9, 2026, but did not disclaim their intention to make, use, sell, offer to sell, and/or import the Infringing Products despite notice of the Asserted Patents since March 18, 2026.

47. Dorman wrote to Defendants a fourth time on July 17, 2026, demanding that Defendants stop, cease, and desist all further infringing activities, and Dorman provided claim charts identifying where each claim limitation of at least one claim from each Asserted Patent is found in the Infringing Products. Defendants did not respond.

48. Dorman followed up on July 31, 2026, requesting a response. Defendants did not respond.

49. Defendants' infringements of the Asserted Patents have been, and continue to be, intentional, willful, and malicious, which is evidenced, on information and belief, at least by Defendants' copying of Dorman's Patented Products and refusal to stop infringing despite actual notice of the Asserted Patents and Dorman's efforts to amicably resolve this dispute without Court intervention.

### COUNT I:  Patent Infringement of the '005 Patent Under 35 U.S.C. § 271 By All Defendants

50. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51. The Defendants, individually and collectively, have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '005

Patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling (either directly or through intermediaries), and/or importing into the United States, the Infringing Products, including in this State and in this District.

52.     For example, the Defendants, individually and collectively, infringe at least claim 1 of the '005 Patent that reads:

1.  An adaptor for connecting an oil filter and an oil cooler to an engine, the adaptor comprising:

a single metallic casting having:

an elongated body with a lower surface configured to mate with an oil lubrication network in an engine, an oil filter housing is defined at a first end of the elongated body, and an upper surface that is configured to mate with an oil cooler;

wherein the elongated body includes an oil lubrication flow path that is wholly within the elongated body and extends between an oil lubrication network in an engine, and the oil filter housing, and at least one threaded aperture is formed in the single metallic casting for receiving at least one additional component in a direct threaded engagement with the single metallic casting.

53.     The Infringing Products including, but not limited to, OFHA1001, and any equivalent thereof, perform each and every limitation of '005 Patent claim 1. The following paragraphs explain the infringement in detail. A claim chart evidencing the Infringing Products' infringement of claim 1 of the '005 Patent is attached as Exhibit 7.

54.     The Infringing Products have/are adaptors for connecting an oil filter and an oil cooler to an engine.  For example, the Infringing Products are an "Engine Oil Filter Housing" that provides a connection between an engine's oil filter for oil filtration to the engine's lubrication network while also allowing connection to the oil cooler for thermal management of the engine's oil. Ex. 7 at 1-6.

14

55. The Infringing Products include a single metallic casting. For example, the Infringing Products have a unitary body manufactured from casted aluminum. Ex. 7 at 4-5.

56. The single metallic casting of the Infringing Products includes an elongated body with a lower surface configured to mate with an oil lubrication network in an engine, an oil filter housing is defined at a first end of the elongated body, and an upper surface that is configured to mate with an oil cooler. For example, the Infringing Products have an elongated body of the casted aluminum piece with a lower surface that mates with an oil lubrication network in an engine and with an upper surface that mates with an oil cooler. Ex. 7 at 4-5. Additionally, the elongated body has an oil filter housing at a first end. *Id.*

57. The elongated body of the Infringing Products includes an oil lubrication flow path that is wholly within the elongated body and extends between an oil lubrication network in an engine and the oil filter housing. For example, the elongated body of the Infringing Products contains a path within it that extends between the engine's oil lubrication network and the oil filter in the housing at one end of the elongated body. Ex. 7 at 5-6.

58. The Infringing Products include at least one threaded aperture formed in the single metallic casting for receiving at least one additional component in a direct threaded engagement with the single metallic casting. For example, the Infringing Products have threaded apertures casted as a part of the unitary aluminum body that receive respective threaded components. Ex. 7 at 7-8.

59. Defendants have also induced and continue to induce infringement of one or more claims of the '005 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(b). Defendants have knowingly and intentionally taken affirmative acts to encourage and aid infringement, including by marketing the Infringing Product at least on their websites

https://www.drivparts.com/part-details.html?part_number=OFHA1001&brand_code=BCWV and https://www.felpro.com/parts/leak-repair/oil-filter-housing-assemblies.html despite Defendants' knowledge of the Asserted Patents since at least March 18, 2026. Defendants' websites encourage customers to use the Infringing Products, including, *inter alia*, by providing embedded links on their websites directing customers where they can "get [the Infringing Products] installed" and "where to buy" the Infringing Products. Upon information and belief, Defendants provide within the Infringing Products' packaging "Installation Tips" and encourage mechanics, retailers, distributors, installers, and end users to install and use the Infringing Products in a manner that practices every limitation of at least claim 1 of the '005 Patent. Upon information and belief, customers have in fact installed and used the Infringing Products in the United States.

60.     Upon information and belief, Defendants knew of the '005 Patent and knew that their marketing and encouragement would cause their customers to infringe at least claim 1 of the '005 Patent, and Defendants specifically intended for their customers to use the Infringing Products they promoted. For example, Dorman's Patented Products sold that practice the '005 Patent have been marked with the domain URL to Dorman's virtual marking webpage, www.dormanproducts.com/patents, where the '005 Patent is listed. As another example, Defendants received actual notice of the '005 Patent and Dorman's infringement allegations, yet, despite that knowledge, Defendants have continued to use, offer to sell, sell, make, and/or import their Infringing Products.

61.     Defendants' acts of infringement have been without express or implied license by Plaintiffs, are in violation of Plaintiffs' rights, and will continue to violate Plaintiffs' rights unless enjoined by this Court.

16

62.     Defendants' infringement of the '005 Patent has been, and continues to be, intentional, willful, and malicious.

63.     Plaintiffs have been, are being, and will continue to be injured and have suffered, are suffering, and will continue to suffer injury and damages for which they are entitled to relief under at least 35 U.S.C. §§ 281, 284, and 285.

64.     The facts and circumstances demonstrate that this is an exceptional case and damages should be trebled.

65.     Defendants have caused, are causing, and, if not enjoined, will continue to cause irreparable harm to Plaintiffs, including loss of market share, price erosion, lost customer relationships, and damage to goodwill for which there is no adequate remedy at law and for which Plaintiffs are entitled to injunctive relief under at least 35 U.S.C. § 283.

## COUNT II:  Patent Infringement of the '674 Patent Under 35 U.S.C. § 271 By All Defendants

66.     Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

67.     The Defendants, individually and collectively, have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '674 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling (either directly or through intermediaries), and/or importing into the United States, the Infringing Products, including in this State and in this District.

68.     For example, the Defendants, individually and collectively, infringe at least claim 1 of the '674 Patent that reads:

>    1. An engine oil adaptor assembly for mounting in an engine valley, the adaptor comprising:
>
>    a unitary metallic casting that defines an integrated structure having:

17

an elongated casted body portion with a lower surface configured to mate with a predetermined existing engine;

an internal lubrication flow path formed within the elongated casted body that connects to a lubrication network within a valley in the predetermined existing engine and an oil filter housing defined at a first end of the elongated casted body; and,

an upper surface of the elongated body is configured to mate with an oil cooler;

wherein the elongated casted body includes a plurality of apertures that are directly threaded in the elongated casted body for mating with a respective threaded component.

69. The Infringing Products including, but not limited to, OFHA1001, and any equivalent thereof, perform each and every limitation of '674 Patent claim 1. The following paragraphs explain the infringement in detail. A claim chart evidencing the Infringing Products' infringement of claim 1 of the '674 Patent is attached as Exhibit 8.

70. The Infringing Products are engine oil adaptor assemblies for mounting in an engine valley. For example, the Infringing Products are an oil filter housing that provides an adaptor for the oil filter and the oil cooler of an engine lubrication system that connects into the lubrication system between the cylinder heads (the valley) of an internal combustion engine. Ex. 8 at 1-6.

71. The Infringing Products include a unitary metallic casting that defines an integrated structure. For example, the Infringing Products are singular, unitary bodies composed of casted aluminum that define integrated structures. Ex. 8 at 3.

72. The Infringing Products include an elongated casted body portion with a lower surface configured to mate with a predetermined existing engine. For example, the Infringing Products have an elongated casted body portion with a lower surface that mates with an internal combustion engine. Ex. 8 at 3-4.

73.    The Infringing Products include an internal lubrication flow path formed within the elongated casted body that connects to a lubrication network within a valley in the predetermined existing engine and an oil filter housing defined at a first end of the elongated casted body. For example, the elongated casted body of the Infringing Products has an internal structure formed within that allows oil to flow through the elongated casted body and connect to the opening of the lubrication network of an engine. Ex. 8 at 5-6. For example, the Infringing Products have a housing for an oil filter at one end, the first end, of the elongated casted body. *Id.*

74.    The Infringing Products include an upper surface of the elongated body configured to mate with an oil cooler. For example, the elongated casted body portion of the Infringing Products has an upper surface which mates with an oil cooler. Ex. 8 at 6-7.

75.    The elongated casted body of the Infringing Products includes a plurality of apertures that are directly threaded in the elongated casted body for mating with a respective threaded component. For example, the Infringing Products have threaded apertures casted as a part of the unitary aluminum body that receive respective threaded components. Ex. 8 at 7-8.

76.    Defendants have also induced and continue to induce infringement of one or more claims of the '674 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(b). Defendants have knowingly and intentionally taken affirmative acts to encourage and aid infringement, including by marketing the Infringing Product at least on their websites https://www.drivparts.com/part-details.html?part_number=OFHA1001&brand_code=BCWV and https://www.felpro.com/parts/leak-repair/oil-filter-housing-assemblies.html despite Defendants' knowledge of the Asserted Patents since at least March 18, 2026. Defendants' websites encourage customers to use the Infringing Products, including, *inter alia*, by providing embedded links on their websites directing customers where they can "get [the Infringing

19

Products] installed" and "where to buy" the Infringing Products. Upon information and belief, Defendants provide within the Infringing Products' packaging "Installation Tips" and encourage mechanics, retailers, distributors, installers, and end users to install and use the Infringing Products in a manner that practices every limitation of at least claim 1 of the '674 Patent. Upon information and belief, customers have in fact installed and used the Infringing Products in the United States.

77.    Upon information and belief, Defendants knew of the '674 Patent and knew that their marketing and encouragement would cause their customers to infringe at least claim 1 of the '674 Patent, and Defendants specifically intended for their customers to use the Infringing Products they promoted. For example, Dorman's Patented Products sold that practice the '674 Patent have been marked with the domain URL to Dorman's virtual marking webpage, www.dormanproducts.com/patents, where the '674 Patent is listed. As another example, Defendants received actual notice of the '674 Patent and Dorman's infringement allegations, yet, despite that knowledge, Defendants have continued to use, offer to sell, sell, make, and/or import their Infringing Products.

78.    Defendants' acts of infringement have been without express or implied license by Plaintiffs, are in violation of Plaintiffs' rights, and will continue to violate Plaintiffs' rights unless enjoined by this Court.

79.    Defendants' infringement of the '674 Patent has been, and continues to be, intentional, willful, and malicious.

80.    Plaintiffs have been, are being, and will continue to be injured and have suffered, are suffering, and will continue to suffer injury and damages for which they are entitled to relief under at least 35 U.S.C. §§ 281, 284, and 285.

81.    The facts and circumstances of this case warrant a finding that this case is exceptional, and damages should be trebled.

82.    Defendants have caused, are causing, and, if not enjoined, will continue to cause irreparable harm to Plaintiffs, including at least loss of market share, price erosion, lost customer relationships, and damage to goodwill for which there is no adequate remedy at law and for which Plaintiffs are entitled to injunctive relief under at least 35 U.S.C. § 283.

## COUNT III:  Patent Infringement of the '675 Patent Under 35 U.S.C. § 271 By All Defendants

83.    Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

84.    The Defendants, individually and collectively, have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '675 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling (either directly or through intermediaries), and/or importing into the United States, the Infringing Products, including in this State and in this District. For example, the Defendants, individually and collectively, infringe at least claim 12 of the '675 Patent that reads:

12. An adaptor for connecting an oil filter to an engine lubrication system, the adaptor comprising:

a one-piece metallic casting having:

an elongated body portion with; a lower surface configured to mate with an engine having a lubrication network; an upper surface configured to mate with an oil cooler; an integrally casted oil filter housing extending from an upper surface at a first end of the elongated body portion; and, a fluid passage that extends through the elongated body portion and establishes a flow path between the lubrication network and the oil filter housing;

wherein the elongated body portion includes a plurality of apertures that are threaded directly in the casting for mating with a respective threaded component.

21

85.     The Infringing Products including, but not limited to, OFHA1001, and any equivalent thereof, perform each and every limitation of '675 Patent claim 12. The following paragraphs explain the infringement in detail. A claim chart evidencing the Infringing Products' infringement of claim 12 of the '675 Patent is attached as Exhibit 9.

86.     The Infringing Products are an engine oil adaptor. For example, the Infringing Products are an adaptor for engine oil allowing for oil filtration and cooling. Ex. 9 at 1-2.

87.     The Infringing Products include a one-piece metallic casting. For example, the Infringing Products are singular, unitary bodies composed of casted aluminum. Ex. 9 at 3.

88.     The Infringing Products include an elongated body portion with: a lower surface configured to mate with a lubrication network in an engine; an upper surface configured to mate with a cooling component; an integrally casted oil filter housing extending from an upper surface at a first end of the elongated body portion. For example, the Infringing Products have an elongated body portion, which has a lower surface that connects to the openings of the oil lubrication network of the vehicle's engine to which the Infringing Products are installed and an integrally casted oil filter housing extending from an upper surface at a first end of the elongated body portion. Ex. 9 at 4-6. Further, the elongated body portion of the Infringing Products has an internal path that allows for oil to flow through the elongated body portion from the engine's lubrication network and the housing containing the oil filter. Ex. 9 at 4-7.

89.     The elongated body portion of the Infringing Products includes a plurality of casted apertures that are threaded in the metallic casting for mating with a respective threaded component. For example, the Infringing Products have threaded apertures casted as part of the elongated portion of the unitary aluminum body that receive respective threaded components. Ex. 9 at 8-9.

90. Defendants have also induced and continue to induce infringement of one or more claims of the '675 Patent, including at least claim 12, in violation of 35 U.S.C. § 271(b). Defendants have knowingly and intentionally taken affirmative acts to encourage and aid infringement, including by marketing the Infringing Product at least on their websites https://www.drivparts.com/part-details.html?part_number=OFHA1001&brand_code=BCWV and https://www.felpro.com/parts/leak-repair/oil-filter-housing-assemblies.html despite Defendants' knowledge of the Asserted Patents since at least March 18, 2026. Defendants' websites encourage customers to use the Infringing Products, including, *inter alia*, by providing embedded links on their websites directing customers where they can "get [the Infringing Products] installed" and "where to buy" the Infringing Products. Upon information and belief, Defendants provide within the Infringing Products' packaging "Installation Tips" and encourage mechanics, retailers, distributors, installers, and end users to install and use the Infringing Products in a manner that practices every limitation of at least claim 12 of the '675 Patent. Upon information and belief, customers have in fact installed and used the Infringing Products in the United States.

91. Upon information and belief, Defendants knew of the '675 Patent and knew that their marketing and encouragement would cause their customers to infringe at least claim 12 of the '675 Patent, and Defendants specifically intended for their customers to use the Infringing Products they promoted. For example, Dorman's Patented Products sold that practice the '675 Patent have been marked with the domain URL to Dorman's virtual marking webpage, www.dormanproducts.com/patents, where the '675 Patent is listed. As another example, Defendants received actual notice of the '675 Patent and Dorman's infringement allegations, yet, despite that knowledge, Defendants have continued to use, offer to sell, sell, make, and/or import their Infringing Products.

92. Defendants' acts of infringement have been without express or implied license by Plaintiffs, are in violation of Plaintiffs' rights, and will continue to violate Plaintiffs' rights unless enjoined by this Court.

93. Defendants' infringement of the '675 Patent has been, and continues to be, intentional, willful, and malicious.

94. Plaintiffs have been, are being, and will continue to be injured and have suffered, are suffering, and will continue to suffer injury and damages for which they are entitled to relief under at least 35 U.S.C. §§ 281, 284, and 285.

95. The facts and circumstances of this case warrant a finding that this case is exceptional, and damages should be trebled.

96. Defendants have caused, are causing, and, if not enjoined, will continue to cause irreparable harm to Plaintiffs, including at least loss of market share, price erosion, lost customer relationships, and damage to goodwill for which there is no adequate remedy at law and for which Plaintiffs are entitled to injunctive relief under at least 35 U.S.C. § 283.

**COUNT IV:  Patent Infringement of the '755 Patent Under 35 U.S.C. § 271 By All Defendants**

97. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

98. The Defendants, individually and collectively, have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '755 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling (either directly or through intermediaries), and/or importing into the United States, the Infringing Products, including in this State and in this District.

99.     For example, the Defendants, individually and collectively, infringe at least claim 12 of the '755 Patent that reads:

12. An adaptor for an engine lubrication system, the adaptor comprising:

a single-cast metallic body comprising:

a filter housing at a first end of the single-cast metallic body;

a lower surface of the single-cast metallic body configured to mate with an engine lubrication system;

an upper surface of the single-cast metallic body between the filter housing and a second end of the single-cast metallic body that is configured to mate with a lubrication cooler;

a lubrication flow path extending within the single-cast metallic body between the filter housing and the second end of the single-cast metallic body to connect the lower surface of the single-cast metallic body with the filter housing; and

an internally-threaded casted aperture for mating with an externally threaded member.

100.    The Infringing Products including, but not limited to, OFHA1001, and any equivalent thereof, perform each and every limitation of '755 Patent claim 12. The following paragraphs explain the infringement in detail. A claim chart evidencing the Infringing Products' infringement of claim 12 of the '755 Patent is attached as Exhibit 10.

101.    The Infringing Products are an adaptor for an engine lubrication system. For example, the Infringing Products are an adaptor for engine oil allowing for oil filtration and cooling. Ex. 10 at 1-3.

102.    The Infringing Products include a single-cast metallic body. For example, the Infringing Products are singular, unitary bodies composed of casted aluminum. Ex. 10 at 4.

103.    The Infringing Products include a filter housing at a first end of the single-cast metallic body. For example, the single-cast metallic body of the Infringing Products have a housing for an oil filter at the first end. Ex. 10 at 5-9.

25

104.    The Infringing Products include a single-cast metallic body with a lower surface configured to mate with an engine lubrication system. For example, the Infringing Products have a single-cast metallic body, which has a lower surface that connects to the openings of the oil lubrication network. Ex. 10 at 5-9.

105.    The Infringing Products include a single-cast metallic body with an upper surface of the single-cast metallic body between the filter housing and a second end of the single-cast metallic body that is configured to mate with a lubrication cooler. For example, the Infringing Products have a single-cast metallic body with an upper surface that connects to the openings of a cooling component for thermal management of the engine's oil. Ex. 10 at 5-9.

106.    The Infringing Products include a lubrication flow path extending within the single-cast metallic body between the filter housing and the second end of the single-cast metallic body to connect the lower surface of the single-cast metallic body with the filter housing. For example, the Infringing Products have a single-cast metallic body with a path that allows for oil to flow within the single-cast metallic body from the engine's lubrication network to the housing containing the oil filter. Ex. 10 at 9-13.

107.    The single-cast metallic body of the Infringing Products has an internally-threaded casted aperture for mating with an externally threaded member. For example, the Infringing Products have a threaded aperture casted as part of the single-cast metallic body that mates with an externally threaded member. Ex. 10 at 14-15.

108.    Defendants have also induced and continue to induce infringement of one or more claims of the '755 Patent, including at least claim 12, in violation of 35 U.S.C. § 271(b). Defendants have knowingly and intentionally taken affirmative acts to encourage and aid infringement, including by marketing the Infringing Product at least on their websites

https://www.drivparts.com/part-details.html?part_number=OFHA1001&brand_code=BCWV and https://www.felpro.com/parts/leak-repair/oil-filter-housing-assemblies.html despite Defendants' knowledge of the Asserted Patents since at least March 18, 2026. Defendants' websites encourage customers to use the Infringing Products, including, *inter alia*, by providing embedded links on their websites directing customers where they can "get [the Infringing Products] installed" and "where to buy" the Infringing Products. Upon information and belief, Defendants provide within the Infringing Products' packaging "Installation Tips" and encourage mechanics, retailers, distributors, installers, and end users to install and use the Infringing Products in a manner that practices every limitation of at least claim 12 of the '755 Patent. Upon information and belief, customers have in fact installed and used the Infringing Products in the United States.

109.  Upon information and belief, Defendants knew of the '755 Patent and knew that their marketing and encouragement would cause their customers to infringe at least claim 12 of the '755 Patent, and Defendants specifically intended for their customers to use the Infringing Products they promoted. For example, Dorman's Patented Products sold that practice the '755 Patent have been marked with the domain URL to Dorman's virtual marking webpage, www.dormanproducts.com/patents, where the '755 Patent is listed. As another example, Defendants received actual notice of the '755 Patent and Dorman's infringement allegations, yet, despite that knowledge, Defendants have continued to use, offer to sell, sell, make, and/or import their Infringing Products.

110.  Defendants' acts of infringement have been without express or implied license by Plaintiffs, are in violation of Plaintiffs' rights, and will continue to violate Plaintiffs' rights unless enjoined by this Court.

27

111. Defendants' infringement of the '755 Patent has been, and continues to be, intentional, willful, and malicious.

112. Plaintiffs have been, are being, and will continue to be injured and have suffered, are suffering, and will continue to suffer injury and damages for which they are entitled to relief under at least 35 U.S.C. §§ 281, 284, and 285.

113. The facts and circumstances of this case warrant a finding that this case is exceptional, and damages should be trebled.

114. Defendants have caused, are causing, and, if not enjoined, will continue to cause irreparable harm to Plaintiffs, including at least loss of market share, price erosion, lost customer relationships, and damage to goodwill for which there is no adequate remedy at law and for which Plaintiffs are entitled to injunctive relief under at least 35 U.S.C. § 283.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiffs respectfully seek:

A. Judgment that Defendants have infringed the '005 Patent and that such infringement was willful;

B. Judgment that Defendants have infringed the '674 Patent and that such infringement was willful;

C. Judgment that Defendants have infringed the '675 Patent and that such infringement was willful;

D. Judgment that Defendants have infringed the '755 Patent and that such infringement was willful;

E. A permanent injunction against any further infringement of the '005, '674, '675, and '755 Patents by the Defendants, and each of their agents, employees, servants, attorneys,

successors and assigns, and all others in privity or active concert with any of them, and further equitable relief as may become necessary during the pendency of this action;

F.      An award of damages adequate to compensate Plaintiffs for the patent infringement that has occurred, including lost profits suffered by Plaintiffs as a result of Defendants' infringements, but in no event an amount less than a reasonable royalty, together with prejudgment interest and costs pursuant to at least 35 U.S.C. § 284;

G.      An order awarding Plaintiffs enhanced damages pursuant to 35 U.S.C. § 284 at least because of Defendants' intentional, willful, and malicious patent infringements;

H.      An award of Plaintiffs' reasonable attorney fees and a finding that this is an exceptional case, pursuant to at least 35 U.S.C. § 285; and

I.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of any and all issues triable of right by a jury pursuant to the Seventh Amendment to the United States Constitution or as given by statute of the United States.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ David E. Moore*

Erik S. Maurer
Abraham J. Varon
BANNER & WITCOFF, LTD.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Tel: (312) 463-5000

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

Dated: August 10, 2026
13091917 / 26416.00001

*Attorneys for Plaintiffs RB Distribution, Inc.*
*and Dorman Products, Inc.*

30